350 A.2d 855

COMMONWEALTH of Pennsylvania

v.

Frank MILLER, Appellant.

Supreme Court of Pennsylvania.

Submitted Nov. 20, 1975.

Decided Jan. 29, 1976.

Nicholas J. Nastasi, Arthur R. Shuman, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

NIX, Justice.

Appellant was tried and convicted before a jury on the charges of murder in the first degree, conspiracy to commit murder and unlawfully carrying a firearm. After dismissal of post-verdict motions, a sentence of life imprisonment was imposed under the murder indictment. It is that judgment of sentence which is presently before us on direct appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1).

On March 1, 1972, Mr. James Robinson, the deceased, and his wife purchased six bags of what was purported to be heroin from a Mr. Hampton. After injecting the substance the deceased and his wife did not receive the expected reaction and they set out again in search of Mr. Hampton to register their complaint. Later during the evening, they located Mr. Hampton in a bar. At that time, Hampton was accompanied by his brother, Robert, and Frank Miller, the appellant. An altercation ensued during which Robert obtained a gun from behind the counter and threatened to shoot Robinson. Robinson ran from the bar followed by appellant and others.

Robert Hampton remained in the bar and a short time thereafter, appellant entered and requested Robert to give him the gun stating: "Give me the (profanity) gun and I'll show you what to do." Appellant took the gun and proceeded out of the bar in pursuit of the deceased. The appellant encountered the deceased approximately one half block away and shot and killed him. The cause of death was determined to have been a gunshot wound of the head.

■ Appellant first claims that he was improperly barred from testifying at trial on his own behalf because of the possibility of impeachment by the introduction of his extensive prior criminal record of convictions. Appellant relies on our decision in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973) to support this contention. This reliance, however, is clearly misplaced.

The only reference to the fear of impeachment as being the basis for the decision not to testify occurred after the Commonwealth had closed its case and the defense had rested without offering any evidence. In response to the court's questioning, the following took place:

"THE COURT: Did you wish to say anything further in regard to your decision not to take the stand?

THE DEFENDANT: No, sir.

MR. NASTASI [Defense Counsel]: Your Honor, there is one thing that he might want to say if I reflect on it and that's this. We have thoroughly on numerous occasions went over the facts of this case. He has told me what, in his observation and recollection, occurred. He cannot take the stand and say that because of his very substantial prior record."

In *Commonwealth v. Bighum, supra,* after limiting the prior convictions that may be used for impeachment purposes to those involving dishonesty or false statements, we modified former decisional law which gave the prosecutor an absolute right to introduce this testimony and left the decision within the sound discretion of the trial court, subject to certain guidelines set forth therein. However, it is self evident that a court cannot be charged with an abuse of discretion where it has not been called upon or attempted to exercise its discretion. Here, counsel for appellant merely stated that the defendant had decided not to present evidence or to testify without any attempt to explain the reasons for the decision. It was only after further inquiry by the trial judge that the

fear of the repercussion of the impeachment evidence was first mentioned. Even at that juncture counsel did not seek to ascertain from the prosecution if it intended to attempt to introduce the prior record in the event appellant elected to testify. Nor did counsel at any time request the court to prevent appellant's prior record from being used for impeachment purposes. Thus, there is no basis for finding an abuse of discretion for failure to provide relief to appellant where relief was never requested of the court.

The second basis offered to support appellant's request for a new trial is the alleged newly discovered existence of certain testimony which it is urged falls within the requirement for after-discovered evidence. Specifically, it is argued that two eyewitnesses, a Mr. Edward El a/k/a Edward Gardner and a Mr. Gary W. Townsell, possessed information which would exculpate appellant and that a new trial is mandated to afford appellant the opportunity to present this evidence before a finder of fact.

The standard for the grant of a new trial on the basis of after-discovered evidence requires that four conditions must be met. First, the evidence must have been discovered after the trial. Second, it must be apparent that the testimony could not have been available at trial through the exercise of reasonable diligence. Third, the evidence must not be cumulative or primarily directed at impeaching credibility. Fourth, the testimony must be such as would likely compel a different result. *Commonwealth v. Peoples*, 456 Pa. 274, 276, 319 A.2d 679, 681 (1974); *Commonwealth v. Bulted*, 443 Pa. 422, 428–29, 279 A.2d 158, 161 (1971); *Commonwealth v. Mount*, 435 Pa. 419, 423, 257 A.2d 578, 580 (1969); *Commonwealth v. Alston*, 430 Pa. 471, 474, 243 A.2d 404, 406 (1968); *Commonwealth v. Schuck*, 401 Pa. 222, 229, 164 A.2d 13, 17 (1960), *cert. denied*, 368 U.S. 884, 82 S.Ct. 138, 7 L. Ed.2d 188 (1961).

 After careful review of the testimony adduced during the evidentiary hearing conducted by the learned court below upon the claim of newly discovered evidence, we are satisfied that the testimony of both of the proffered witnesses fails to meet the requisite standard. Mr. El was allegedly an eyewitness who was known to appellant prior to the incident in question. Appellant testified that he had seen the proposed witness earlier on the evening in question. Miller stated that he first became aware of the information possessed by Mr. El when the two men met by chance in the cell room in City Hall on the morning of the beginning of the trial. Appellant conveyed this information to his counsel prior to the beginning of the jury selection process. The defense made no attempt to offer this witness until after both sides had rested and completed their closing arguments. A request was made prior to the beginning of the charge to permit the defense to reopen its case and offer this testimony. This request was denied.[1] Appellant attempts to excuse the belated attempt to introduce this evidence by arguing that appellant was not aware of the name of the witness until the defense had rested its case. We cannot accept this position.

First, when the witness was in the cell room of City Hall, it would have been quite simple, after learning that his testimony might assist its cause, for the defense to have taken the necessary measures to assure his availability as a witness. Equally as significant is the absence of any satisfactory explanation as to the efforts made by the defense between arrest and trial to ascertain those patrons of the bar at the time of the incident which quite possibly would have revealed Mr. El's identity and

---

1. This contention should have properly been framed as an allegation that the trial court abused its discretion in not allowing appellant to reopen its case rather than a claim of after-discovered evidence. However, because in this instance the same considerations are dispositive of the question, the distinction is of no moment.

whereabouts long before the commencement of trial.[2] Most damaging to the present assertion of the appellant is the failure of the defense to make any mention to the court of any efforts being made to find the name of this allegedly crucial witness prior to announcing their intention to rest without offering any testimony. Clearly, the first two requirements of the standard have not been met.

The testimony established that appellant saw Mr. Townsell in the bar on the evening in question. Here again the only explanation for failure to produce Mr. Townsell at trial was that appellant did not know his proper name. Thus, the considerations discussed as to the failure to produce Mr. El at trial are equally applicable here.

Appellant implicitly assumed that he was not obligated to commence his search for either of these witnesses until he had reason to believe that their testimony would, in fact, be favorable to his cause. Clearly, this is an erroneous assumption. Once it is ascertained that there is a possible source of information concerning the litigated events, it is incumbent upon the parties to immediately proceed to seek the information that might be provided by that source and not depend upon some fortuitous event to make the information available.

Under the testimony established on this record, it was eminently clear that the court en banc was correct in denying the motion for a new trial based on the claim of after-discovered evidence.

Judgment of sentence affirmed.

2. The record indicated that although appellant was acquainted with Mr. El before the shooting, he only knew him by a nickname and did not know where he resided.